725 F.2d 954
 Crayton E. McELVEEN, Jr.,; Geary Lee Jamison; on behalf of
themselves and all other inmates of Prince William County
Jail, present and future, and Julia Phillips; Larry Eugene
Collins; Richard Murray; Jerry Michael Collins; Jeffrey
Proctor; Charles Cuniff; Kelly Roach; Milton Jackson;
Westley S. Blackburn; Bernard R. Richardson; William
Edward Parker; James Edward Parker; James Dodson; Charles
Scarpone; Buddie Spicer; Matthew L. Wright; Larry H.
Shane; Joseph Deans, Jr.,; Eric Lee Backherms; Timothy
Wayne Orehowsky, Appellees,
v.
COUNTY OF PRINCE WILLIAM; Eileen Stout, Sup., Dumfries
District; Donald Kidwell, Sup., Woodbridge District; James
J. McCoart, Sup., Neabsco District; G. Richard Pfitzner,
Sup., Coles District; Joseph D. Reading, Sup., Brentsville
District; Kathleen K. Seefeldt, Sup., Occoquan District;
Donald L. White, Sup., Gainesville District; C.A. Rollins,
Jr., Sheriff, Prince William County, Appellants,
and
Terrell Don Hutto, Director, Virginia Department of
Corrections; Sidney Parker, Chairman, Virginia Board of
Corrections; Joseph B. Benedetti, Member, Virginia Board of
Corrections; Donald W. Huffman, Member, Virginia Board of
Corrections; JoAnn P. Digennaro, Member, Virginia Board of
Corrections; Norvell K. Robinson, Member, Virginia Board of
Corrections; William P. Kanto, Member, Virginia Board of
Corrections; Stephen D. Rosenthal, Member, Virginia Board
of Corrections; Arnold J. Smith, Jr., Member, Virginia
Board of Corrections; John W. Williams, III, Member,
Virginia Board of Corrections; individually and in their
official capacities, Appellees.
 No. 82-6679.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1983.
Decided Jan. 26, 1984.
 
 John H. Foote, County Atty., Manassas, Va. (James E. Barnett, Asst. County Atty., Manassas, Va., James A. Welch, Wheaton, Md., on brief), for appellants.
 Alan Katz, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Eric K.G. Fiske, Asst. Atty. Gen., Richmond, Va., on brief) and Marilyn G. Rose, Dumfries, Va. (Ervan E. Kuhnke, Jr., Dumfries, Va., Victor M. Glasberg, Alexandria, Va., on brief), for appellees.
 Before WIDENER, HALL and MURNAGHAN, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 Prince William County, the Sheriff of Prince William County, and the Prince William County Board of Supervisors (collectively referred to as the "County") appeal from orders denying the County's motions for a directed verdict and judgment notwithstanding the verdict on its cross-claim against the Chairman and the Director of the Virginia Board of Corrections, and members of the State Board of Corrections (collectively referred to as the "State") in an action filed by inmates of the Prince William County Jail pursuant to 42 U.S.C. Sec. 1983. The County also appeals from a judgment entered on a jury award of compensatory damages in favor of the inmates. Finding no error, we affirm.
 
 I.
 
 2
 This action was filed in November, 1981, by an inmate and an ex-inmate of the Prince William County Jail (the "Jail").[1] Plaintiffs alleged that during their incarceration they were subjected to overcrowding and other conditions which amounted to cruel and unusual punishment. They requested declaratory and injunctive relief and damages. Named defendants included the County and the State. All defendants except Prince William County were sued in both their individual and official capacities.[2]
 
 
 3
 The County filed a cross-claim against the State, alleging that the State had an obligation to depopulate the Jail by transferring inmates to other local jails, or into the state penal system. The County also asserted that the State's failure to depopulate the Jail rendered the State jointly liable with the County for any verdict based upon overcrowding. The State claimed "good faith" or qualified immunity from such liability.
 
 
 4
 A bifurcated jury trial was conducted on the issues of liability and damages. During the liability portion of the trial, plaintiffs presented evidence that they had been subjected to unconstitutional overcrowding, poor sanitation, understaffing, and lack of access to a law library. The County admitted that jail conditions were poor, but denied liability, and presented evidence that the State was aware of the overcrowded conditions. The State conceded that the Jail was overcrowded but nevertheless denied liability. The State presented evidence that the Board of Corrections had discussed the situation with its counsel and, upon his advice, requested the County Circuit Court to order the County to either depopulate the Jail or erect a new jail. Shortly thereafter, the Board was advised by the Chief Judge of the County Circuit Court that the planning process was underway for a new jail. The State emphasized that the Board's communication with the state court was the only action it could have taken to limit overcrowding in the Jail. The State also presented evidence that the Department of Corrections transferred some inmates out of the Jail and could not have transferred any more without overburdening other local facilities or the State penitentiary. At the close of the State's evidence the County moved for a directed verdict on its cross-claim. The district judge deferred ruling on this motion and, instead, took the cross-claim under advisement.
 
 
 5
 The district judge instructed the jury that the State defendants would not be liable for damages for jail conditions found unconstitutional if the State defendants "believed in good faith that their actions were lawful, and that belief was a reasonable one for them to hold." The jury returned a verdict in favor of plaintiffs, against the County, and in favor of the State defendants in their individual capacities.[3] Subsequently, the County moved for judgment notwithstanding the verdict and "renewed" its motion for a directed verdict on its cross-claim against the State. These motions were made on the ground that the jury was given the wrong standard with which to evaluate the State's defense of good-faith immunity. Both motions were denied.
 
 
 6
 During the damages portion of the trial, the jury awarded the inmates a total of $210,000 in compensatory damages against the County. The court entered judgment on that verdict and the County moved for an amended judgment or, in the alternative, for judgment notwithstanding the verdict. This motion was denied. The County appeals from the judgment below and from the orders denying its cross-claim against the State.
 
 II.
 
 7
 On appeal, the County contends that the district court erred in denying the County's cross-claim against the State because the court did not evaluate the State's good-faith defense by a strictly objective standard. In addition, the County argues that there was insufficient evidence to support the jury award. We disagree with both of these contentions.
 
 
 8
 The good-faith standard employed by the district judge in instructing the jury included both the subjective element of good faith "belief," and the objective element of "reasonableness" for that belief.[4] The County argues, however, that applicable law requires the use of a purely objective standard. We find this position untenable.
 
 
 9
 The standard employed by the district judge originated in Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In Scheuer, the Supreme Court outlined the scope of qualified immunity.
 
 
 10
 [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the ... circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.
 
 
 11
 Id. at 247-48, 94 S.Ct. at 1692 (emphasis added). The year after Scheuer was decided, the Supreme Court addressed the good-faith standard again in Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The Wood Court observed that the appropriate standard necessarily contained elements of both objective and subjective good faith: "[t]he official himself must be acting sincerely and with a belief that he is doing right, but an act violating [an individual's] constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law ... than by the presence of actual malice." 420 U.S. at 321, 95 S.Ct. at 1000. The Court cited Scheuer with approval, and made no effort to criticize or distinguish the good-faith test as enunciated in that case.
 
 
 12
 In 1978, the Supreme Court again considered the good-faith standard in Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The Navarette Court quoted extensively from Scheuer and Wood, and reaffirmed the good-faith standard as expressed in those cases. Thus, we find that in Scheuer, Wood, and Navarette, the Supreme Court consistently deemed the measure of good faith to be a combination of both objective and subjective elements. Other circuits that have considered the elements of the good-faith defense have found similarly. See, e.g., Smiddy v. Varney, 665 F.2d 261 (9th Cir.1981); Reimer v. Short, 578 F.2d 621 (5th Cir.1978), cert. denied, 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979); Laverne v. Corning, 522 F.2d 1144 (2nd Cir.1975).
 
 
 13
 The County, however, argues that in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court abolished the subjective element of the good-faith defense. We disagree. In Harlow, the Supreme Court clearly recognized that:
 
 
 14
 [T]he "good faith" defense has both an "objective" and "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic unquestioned constitutional rights." The subjective component refers to "permissible intentions".... Referring both to the objective and subjective elements, we have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with malicious intention to cause a deprivation of constitutional rights or other injury...."
 
 
 15
 457 U.S. at 815, 102 S.Ct. at 2737 (citing Wood v. Strickland, 420 U.S. at 308, 320-22, 95 S.Ct. at 994, 999-1000).
 
 
 16
 The Harlow Court went on to observe that "[t]he subjective element of the good faith defense frequently has proved incompatible with our admonition ... that insubstantial claims should not proceed to trial." Id. The Court, therefore, held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 817, 102 S.Ct. at 2738. This holding was intended to facilitate the resolution of insubstantial claims against government officials by summary judgment. Although the Harlow Court indicated that the good-faith defense turns primarily on objective factors, 457 U.S. at 819, 102 S.Ct. at 2739, it did not hold that an exclusively objective standard was to be applied to claims that proceeded to trial.
 
 
 17
 Thus, the County's argument that the standard for good-faith immunity must be purely objective, is untenable, and its claim that the trial court erred by not directing a verdict or granting judgment notwithstanding the verdict, must fail.[5]
 
 III.
 
 18
 The County also contends that the jury award of compensatory damages was not supported by substantial evidence.[6] This argument is clearly meritless. The County concedes in its brief that the Prince William County Jail had become a "terrible facility" which "exceeded permissible constitutional limitations." Numerous actual and compensable injuries were presented by plaintiffs at trial. Fact-finding by a jury will be set aside only where the evidence, viewed in the light most favorable to the parties supporting the jury's verdict, is so clear that reasonable persons could reach no other conclusion than that asserted on appeal. See Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir.1941). Under this standard, there is no basis for setting aside the jury's verdict in the instant case.
 
 IV.
 
 19
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Subsequently, the court granted class certification to all persons incarcerated in the Jail from August 1, 1980, through January 22, 1982
 
 
 [2]
 Before trial, the Sheriff of Prince William County was dismissed as a defendant in his individual capacity
 
 
 [3]
 The court had previously directed verdicts in favor of individual members of the Prince William County Board of Supervisors and the State defendants in their official capacities
 
 
 [4]
 The County does not directly challenge the jury instruction itself or the jury verdict as to liability. Instead, the County refers to the jury instruction as an example of the standard the trial judge himself presumably applied in ruling on the motions for directed verdict and judgment notwithstanding the verdict on the cross-claim
 
 
 [5]
 The County further submits that the State Board of Corrections' reliance on the advice of its counsel in formulating a response to overcrowding in the Jail cannot be used to support a good-faith defense. We disagree
 Although consultation with an attorney is not proof of the Board's good faith, it is certainly indicia of good faith, Jihaad v. O'Brien, 645 F.2d 556, 563 (6th Cir.1981), and therefore should be considered in evaluating the State's defense. Furthermore, the fact that the State defendants found it necessary to consult counsel and then follow his advice tends to vitiate the County's argument that these defendants knew or should have known that their course of action violated the constitutional rights of the members of the inmate class.
 
 
 [6]
 In its brief, the County also argued that compensatory damages could not be awarded in this case as a matter of law. At oral argument, however, the County abandoned this contention in light of Doe v. District of Columbia, 697 F.2d 1115 (D.C.Cir.1983), and, instead, argued only that there was insubstantial evidence to support the award of compensatory damages